## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                                          CRIMINAL ACTION NO. 2:09-cr-00222-04

DAVID A. CREMEANS,

          Defendant.

### MEMORANDUM OPINION

Defendant David A. Cremeans is one of fifty-five members and associates of the Pagans Motorcycle Club (PMC) charged in a sweeping forty-four count indictment. A paired-down twenty-nine count superseding indictment was returned on February 2, 2010. On February 22, 2010, Defendant appeared before the Court to enter a plea of guilty to count one of the superseding indictment, which charged him with racketeering in violation of 18 U.S.C. § 1962(c) (RICO). A detailed stipulation of facts was attached to Defendant's plea agreement for the purpose of establishing the factual basis for the plea. During the plea colloquy, after the elements of the offense were explained to Defendant, the Court asked Defendant, "Are you in fact guilty of the crime charged in Count One? In other words, did you do it?" Defendant answered in the affirmative. At the conclusion of the hearing, the Court found that there was a basis in fact and accepted Defendant's plea of guilty.

Defendant's plea "constituted an admission of all material elements of the crime." *United States v. Nelson*, 484 F.3d 257, 261 (4th Cir. 2007). Nevertheless, following Defendant's guilty

plea, the Court indicated its intent to undertake a review of the factual bases for all guilty pleas previously entered in this case. The reasons for this review have been set forth in detail elsewhere. *See United States v. Barbeito*, 2:09-cr-222, 2010 WL 2243878, 2010 U.S. Dist. LEXIS 55688 (S.D. W. Va. June 3, 2010). Defendant's plea is among those which have been reviewed. Significant unresolved questions about the factual basis for Defendant's plea became apparent.

On June 22, 2010, the Court held a hearing to address the concerns about the factual basis for Defendant's guilty plea. Counsel for Defendant and the Government addressed those concerns. The Court took the matter under advisement at the conclusion of the hearing.

Upon further reflection and review, the Court finds no reason to disturb its previous finding that the Government has adequately established a factual basis for Defendant's plea. As indicated to the parties at the June 22 hearing, the Court hereby sets forth its findings for the record.

Defendant pled guilty to a violation of 18 U.S.C. § 1962(c). The essential elements of a RICO offense are as follows: (1) an enterprise exists or existed; (2) the defendant was associated with the enterprise; (3) the defendant conducted or participated in the affairs of the enterprise; (4) such conduct or participation constituted a pattern of racketeering activity; and (5) the enterprise had an effect on interstate or foreign commerce. *See Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985); *United States v. Hooker*, 841 F.2d 1225, 1227 (4th Cir. 1988). There is sufficient evidence in the record to establish each of these elements.

*1. Existence of Enterprise*

RICO defines an enterprise broadly. The term "includes any . . . group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To be classified as an association-in-fact enterprise under RICO, a group must exhibit "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States,* 129 S. Ct. 2237, 2244 (2009). The PMC, along with its support clubs, easily meets this definition.

According to Defendant's stipulation of facts, the PMC is a national organization subdivided into regions and local chapters. The club has a set hierarchy, with a national president presiding over a "mother club" composed of national officers. These officers each oversee a territorial region and all local chapters within that region. The local chapters are composed of general members and chapter officers, including a president, treasurer, and sergeant at arms. Within the PMC's territory are so-called support clubs, which are subordinate to the PMC. These clubs wear a "16" patch on their jackets to display their loyalty to the PMC. The support clubs must fulfill duties and perform assigned tasks to maintain their support club status. The PMC organization operates under a written constitution and has been in existence for many years. The PMC functions as a social club for its members. It also pursues unlawful ends, according to the stipulations of various defendants, including the protection of its territory from rival motorcycle clubs, and enforcement of rules forbidding cooperation with law enforcement, through the use of violence and intimidation.

*2. Defendant's Association with Enterprise*

Defendant's admissions demonstrate his association with the enterprise. Defendant admits that he was the treasurer and a general member of a PMC chapter in Charleston, West Virginia. He

3

also admits serving as the treasurer, sergeant at arms, and as a general member of a PMC support club, the Last Rebels Motorcycle Club (LRMC).

### 3. *Defendant's Participation in Affairs of Enterprise*

Defendant acknowledges being an active participant in the affairs of the PMC enterprise. This is evidenced by his officer positions in a PMC chapter and in a support club. He further admits to participating in the two incidents charged in the superseding indictment as racketeering acts three and four of count one. These acts will be discussed in greater detail with regard to the next element of the offense.

### 4. *Pattern of Racketeering Activity*

RICO criminalizes an individual's participation in a criminal enterprise's affairs only if his actions constitute "a pattern of racketeering activity." 18 U.S.C. § 1962(c). Racketeering activity is defined as either "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical, . . . which is chargeable under State law and punishable by imprisonment for more than one year," or "any act which is indictable" under any of an extensive list of federal offenses. 18 U.S.C. § 1961(1). Where the racketeering act is a violation of state law, the Government must prove that the elements of the state law offense have been violated. *Barbeito*, 2010 WL 2243878 at *7, 2010 U.S. Dist. LEXIS 55688 at *27. To form a pattern, there must be proof of at least two racketeering acts within a ten-year span. 18 U.S.C. § 1961(5). The acts must be related to the affairs of the enterprise and they must evidence a threat of continuing criminal activity. *See H. J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *ePlus Technology, Inc. v. Aboud*, 313 F.3d 166, 182 (4th Cir. 2002).

Defendant admits participating in two racketeering acts charged in the superseding indictment. The first, racketeering act three of count one, involves an incident that occurred in Portsmouth, Ohio, in November of 2004. According to Defendant's stipulation of facts and facts proffered at a hearing held on June 22, 2010, one of the the PMC's support clubs, the Road Disciples Motorcycle Club (RDMC), was not satisfactorily fulfilling its obligations to the PMC. PMC vice president Floyd Moore ordered West Virginia-based members of the PMC and the LRMC to confront the RDMC members at their clubhouse in Portsmouth, Ohio. The assembled PMC and LRMC members traveled to Portsmouth in several vehicles. A number of them were armed with axe handles and one of them possessed a handgun. Defendant admitted carrying a knife. When they arrived, the PMC and LRMC members entered the RDMC clubhouse in a show of force. The RDMC members were presented with an ultimatum: they could agree to fulfill their support club obligations, relinquish their "16" patches, or risk a violent melee. Fearing violence, the RDMC members turned over their "16" patches.

The predicate offenses for racketeering act three are identified as Ohio Rev. Code Ann. §§ 2911.02 and 2923.03. Section 2923.03 provides that persons who aid and abet offenses are punishable as principles. Section 2911.02 is Ohio's robbery statute. It states, in part:

> (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
> (1) Have a deadly weapon on or about the offender's person or under the offender's control;
> (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
> (3) Use or threaten the immediate use of force against another.

Ohio Rev. Code Ann. § 2911.02. Numerous crimes qualify as theft offenses under Ohio law. Ohio Rev. Code Ann. § 2913.01. The most appropriate theft offense under the present facts appears to be Ohio Rev. Code Ann. § 2913.02, which provides: "No person, with purpose to deprive the owner

5

of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: . . . By threat; . . . [or] By intimidation." Robbery is a felony under Ohio law punishable by more than one year in prison. Thus, it qualifies as a racketeering activity under RICO.

The record is sufficient to establish that Defendant aided and abetted a robbery under Ohio law as charged in racketeering act three. The RDMC were deprived of property, namely their "16" patches. They turned over the patches in response to intimidation and implicit, if not explicit, threats of violence. Such acts constitute a theft offense under Ohio Rev. Code Ann. § 2913.02.[1] Defendant aided and abetted this offense by entering the RDMC clubhouse as part of a show of force with the purpose of contributing to the degree of intimidation. The theft offense is elevated to robbery because Defendant possessed a knife and fellow Defendant Darrell Bumgarner possessed a firearm during the incident. It is immaterial that the victims may not have been aware of the weapons because Ohio's robbery statute requires only that a deadly weapon be under the perpetrator's control during the commission of a theft offense. Ohio Rev. Code Ann. § 2911.02(A)(1). The weapon need not be used, displayed, or brandished. *State v. Wharf*, 715 N.E.2d 172, 175 (Ohio 1999) (discussing Ohio Rev. Code Ann. § 2911.02(A)(1)).

Defendant also stipulates facts establishing his involvement in the plot charged as racketeering act four of count one. In September of 2005, Defendant was a member of a PMC support club, the LRMC. He admits participating in a plan to retaliate against a PMC member who was incarcerated at the Federal Correctional Institution in Ashland, Kentucky (FCI Ashland). The

---

[1] It is of no moment that the patches may have had little monetary value because Ohio Rev. Code Ann. § 2913.02 "defines theft without reference to value." *State v. Smith*, 905 N.E.2d 151, 152 (Ohio 2009).

6

intended victim was labeled a "snitch" for cooperating with law enforcement officers in a federal bank robbery case against another PMC member. There were several motives at play, but Defendant admitted that retaliation was a primary motivation for the planned attack. With the aid of a corrections officer employed at FCI Ashland, Defendant and other LRMC and PMC members arranged for another inmate to "stomp [the victim's] guts out." Defendant agreed to pay the inmate by depositing money in his prison commissary account. The PMC gave its blessing for the plot, which was stopped by law enforcement before it could come to fruition.

Racketeering act four is charged as a conspiracy to retaliate against a witness in violation of 18 U.S.C. §§ 1513(f) and 1513(b)(2), and alternatively as a conspiracy to commit murder in violation of laws of West Virginia, W. Va. Code §§ 61-2-1, 61-10-31, and Kentucky, Ky. Rev. Stat. §§ 506.040, 507.020. The Court's factual basis finding is based on the witness retaliation theory. To establish a conspiracy to retaliate against a witness, the Government would have to prove (1) that there was an agreement with one or other more persons, tacit or expressed, to undertake to violate 18 U.S.C. § 1513(b)(2); (2) that the accused willfully joined the conspiracy; and (3) the accused's intent was to accomplish the criminal purpose of the conspiracy. To establish the object of the conspiracy element, the Government would further have to demonstrate that the agreement, if carried out, would entail (1) that a person would engage in conduct that causes any person bodily injury or threatens any person with bodily injury; (2) that this conduct would be performed knowingly, with the specific intent to retaliate against a witness for information the witness divulged to law enforcement authorities about a federal offense; and (3) that the official to whom the witness divulged the information was a federal agent or otherwise working on behalf of the federal government in some capacity. *See* 18 U.S.C. § 1513(b)(2); *United States v. Draper*, 553 F.3d 174,

180 (2d Cir. 2009). For the sake of argument, the Court assumes that the Government also would have to prove that Defendant knew that the information was divulged to a federal law enforcement officer. *See United States v. Ashley*, 606 F.3d 135, 139 n.1 (4th Cir. 2010) (citing *United States v. Denham*, 663 F. Supp. 2d 561, 566–71 (E.D. Ky. 2009)). The motive of retaliation need not be the sole reason for the planned attack. It need only have been a motivating factor. *See United States v. Vega Molina*, 407 F.3d 511, 529–30 (1st Cir. 2005); *see also United States v. Houlihan*, 937 F. Supp. 75, 76 (D. Mass. 1996).

There are undisputed facts in the record that support each of the elements of a conspiracy to retaliate against a witness.[2] With respect to the elements of conspiracy, Defendant coordinated with PMC and LRMC members and a corrections officer to plan the attack. Defendant was fully aware of the object of the plot and knowingly joined it. The object of the conspiracy, if completed, would have fulfilled the elements of substantive witness retaliation. The intended victim was to be subjected to a violent attack by a large inmate. The intended victim had provided information about a federal offense—a bank robbery prosecuted in a federal court—to federal authorities. Defendant conceded at the hearing that he knew that the information was provided to law enforcement authorities. In his stipulation, he states that the intended victim had cooperated with federal law enforcement. Further, Defendant, through counsel, agreed with the factual assertions of the Government in the hearing, including the assertions that PMC and LRMC members were aware of the intended victim's provision of information to federal authorities about his co-defendant's

---

[2] Following a two-day trial in which Defendant testified about his role in the conspiracy, a jury found co-defendant Michael Stevens guilty of this offense on July 30, 2010.

participation in the bank robbery. Although retaliation was not the only motivation for the planned attack, it was a primary motive according to Defendant.[3]

Racketeering acts three and four form a pattern of racketeering activity. Both acts were related to the PMC enterprise. The robbery of the "16" patches from the RDMC was undertaken on orders from the PMC hierarchy. The plot to retaliate against the informant at FCI Ashland sought to punish the intended victim for providing information about a PMC member's criminal activity. The plot included PMC members and was approved by the PMC hierarchy. The two incidents also display continuity inasmuch as they represented a threat of continuing racketeering activity. Both acts were consistent with the PMC's goals—as alleged by the Government and admitted by Defendant—of protecting its territory and unlawful activities through violence and intimidation. More specifically, the robbery was in line with the PMC's policy of exerting control over subordinate motorcycle clubs within its territory and of forcibly closing any club that did not follow its orders. The FCI Ashland plot protected the PMC's unlawful activities by sending a message to others that persons who provide information about the PMC to law enforcement do so at their own

---

[3] At the trials of Michael Stevens, Defendant testified and recordings of conversations including Defendant regarding this plot were played. There was little mention at these trials of retaliation as a motivation, at least regarding this Defendant, which seemed odd given Defendant's stipulation and statements at the hearing. However, Vince Morris, the intended victim, and Paul Hysell robbed the bank in February of 2004. Hysell was sentenced in June of 2005. Thus, the cooperation of Morris against Hysell was, by September of 2005, probably old news, and the testimony and recordings presented at trial were likely more focused on planning and methods than motivation, thereby explaining this discrepancy.

Furthermore, according to recorded phone calls, Defendant wanted Morris to be beaten and suffer injury because he was a "snitch" and had cooperated with authorities during the bank robbery investigation. The first mention of such recorded phone calls that has been brought to the Court's attention is in paragraph 39 of Defendant's presentence report, and no objection has been raised to this assertion in the report. While the presentence report is not technically in the record as of the entry of this opinion, it likely will be shortly, and the Court will therefore rely upon it.

peril. Each of these sets of circumstances, while contemplated or committed for immediate ends, also sends a message, with the implied but not subtle threat of repetition, that support clubs need to comply with PMC requirements and that snitches would be dealt with severely.

### 5. *Enterprise's Effect on Interstate Commerce*

To establish the jurisdictional element of RICO, there must be evidence that the enterprise affects or is engaged in interstate commerce. *United States v. Altomare*, 625 F.2d 5, 8 n.8 (4th Cir. 1980). The impact on commerce need only be minimal. *United States v. Nascimento*, 491 F.3d 25, 37 (1st Cir. 2007); *see also Altomare*, 625 F.2d at 8 (finding commerce nexus where enterprise purchased supplies from out of state, placed interstate phone calls, and employed people in multiple states); *United States v. Allen*, 656 F.2d 964 (4th Cir. 1981) (finding commerce nexus where enterprise used supplies that had traveled in interstate commerce).

There is more than adequate evidence in the record to establish this element. Defendant's stipulation of facts asserts that the PMC has chapters in multiple states in the eastern United States. The club organizes periodic events, such as meetings and parties, for which members travel from various states to attend. There also is evidence in the record, including signed stipulations of facts by defendants and Government proffers, that the PMC operated an annual motorcycle raffle. Tickets for the raffle were sold by members in various states. The proceeds were delivered by the respective chapter representatives to PMC vice president Floyd Moore in West Virginia, who in turn delivered the proceeds to PMC president David Barbeito in Maryland.

```
```
For the reasons set forth above, the Court **FINDS** that there is an adequate factual basis for Defendant's guilty plea.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion to the Defendant and counsel, and the United States Attorney.

ENTER: September 17, 2010

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE